## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**KEVIN DESHAZER**                                                                                  **PLAINTIFF**

**V.**                                          **NO. 4:16CV00045-SWW-JTR**

**CAROLYN W. COLVIN,**                                                               **DEFENDANT**
**Acting Commissioner,**
**Social Security Administration**

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction:

Plaintiff, Kevin Deshazer, applied for disability income benefits on December 7, 2012, alleging a disability onset date of March 17, 2010. (Tr. at 140-143). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 19). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Deshazer has requested judicial review.

For the reasons stated below, the Court affirms the decision of the Commissioner.

## II.  The Commissioner's Decision:

The ALJ found that Deshazer had not engaged in substantial gainful activity since the alleged onset date of March 17, 2010. (Tr. at 12). The ALJ found at Step Two that Deshazer had the following severe impairments: disorder of the back and migraines. Id. At Step Three, the ALJ determined that Deshazer's impairments did not meet or equal a listed impairment. (Tr. at 13). Before proceeding to Step Four, the ALJ determined that Deshazer had the residual functional capacity ("RFC") to perform light work except that he could not perform overhead reaching. (Tr. at 14). Next, the ALJ found that Deshazer is capable of performing past relevant work as a machine operator at the light exertional level. (Tr. at 17). The ALJ made an alternative finding at Step Five. Evaluating testimony from the Vocational Expert, he held that based on Deshazer's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform, even with the added limitation of no overhead reaching. (Tr. 18). Consequently, the ALJ found that Deshazer was not disabled. (Tr. 19).

## III. Discussion:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to

engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B.  Deshazer's Argument on Appeal

Deshazer argues that substantial evidence does not support the ALJ's assessment of Deshazer's RFC. He finds fault with the great weight given the state-agency physicians, as opposed to the little weight afforded to Dr. Tim Freyaldenhoven, one of Deshazer's treating physicians. Reviewing the entire record, including evidence from other providers, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

Deshazer only addresses his migraines in his RFC argument, so the Court limits its discussion to that impairment.

The first mention of headaches in the medical evidence was at a January 8, 2010 appointment with Dr. William Freeman, M.D.  (Tr. at 322).  Dr. Freeman could not say

conclusively what was going on with Deshazer, but said narcotics were not needed for pain at that time. *Id.*

A narrative report from Dr. Tim Freyaldenhoven, M.D., reveals that Deshazer first mentioned headaches to him on March 26, 2010. (Tr. at 287-89).  Dr. Freyaldenhoven said the headaches occurred only occasionally and were well-controlled by Maxalt. (Tr. at 288).

On May 13, 2010, Deshazer complained of headaches at the UAMS Neurology Clinic. (Tr. at 219).  Dr. Vasuki Dandu noted that Maxalt was helping with the headaches. *Id.*

Deshazer saw Dr. Freeman again on July 2, 2010, complaining of back pain, but Dr. Freeman reported that the headaches were stable at that time. (Tr. at 317).

Deshazer next saw Dr. Freyaldenhoven on January 28, 2011. (Tr. at 262).  Dr. Freyaldenhoven stated that he would continue abortive headache therapy which seemed to be effective. *Id.*

Although there is no corresponding record, Dr. Freyaldenhoven reported that Deshazer was having two headaches per week on a March 23, 2011 visit. (Tr. at 288).  At that time, Deshazer was taking Pamelor and Neurontin for the headaches.  Id.   In his narrative report dated May 3, 2011, Dr. Freyaldenhoven states that Deshazer would have incapacitating headaches twice weekly and would miss at least 40% of the regular work week. (Tr. at 289).

On July 25, 2011, Deshazer was seen by Dr. William Ackerman, M.D. (Tr. at 291).  His chief complaint at that visit was back pain.  Dr. Ackerman diagnosed chronic disabling headaches but proceeded with medication management and not any more aggressive

treatment.  *Id.*  He said he could not indulge in gainful employment, but it is unclear if that analysis derives from the back pain or the headaches.  *Id.*

At a January 18, 2012 visit, Dr. Freyaldenhoven prescribed Imitrex but said that the probability of finding anything with cross-sectional imaging of the head was low due to a normal neurological exam.  (Tr. at 244).  Dr. Freyaldenhoven told Deshazer to work on improving his diet and exercise as a headache remedy.  *Id.*   Deshazer was six feet tall and 233 pounds at that time.  (Tr. at 243).  That appointment was the only time he was seen for headaches in 2012.

On May 14, 2013, over a year after his last appointment for headaches, Deshazer saw Dr. Freeman.  (Tr. at 376).  He presented with intermittent migraines that occurred one to two times monthly.  *Id.*  The symptoms were alleviated by medication.  *Id.*

At a June 4, 2013 appointment with Dr. Freyaldenhoven, Deshazer reported his headaches occurred three times a month, and that Maxalt was effective in minimizing the severity.  (Tr. at 354).  Dr. Freyaldenhoven again prescribed a healthy diet and regular exercise as a headache remedy, and continued his medications.  (Tr. at 356).

Deshazer reported to Dr. Freeman on August 1, 2013 that the headaches occurred one to two times a month and were alleviated by medication.  (Tr. at 378).  He reported the same at a November 18, 2013 appointment.  (Tr. at 380).

Both state-agency physicians reviewed Deshazer's records and concluded that the medical evidence supported Deshazer having the RFC to perform light work, with overhead reaching limitations.  (Tr. at 71, 83).

The ALJ must consider all of the evidence in the record when determining Deshazer's RFC, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). If, in the light of all the evidence, "the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L. Ed 2d 119 (1987).

Deshazer argues that Dr. Freyaldhoven's report that he would miss 40% of a regular work week should be given great weight, and that it calls for a finding of disability. However, based on multiple reports to at least three doctors, Deshazer was experiencing only 1-2 headaches per month in 2013, the year before the hearing. Deshazer had a gap in treatment of one year before 2013. Only Dr. Freyaldenhoven reported more frequent headaches, and he observed that only once in the record. (Tr. at 289). Deshazer regularly told Dr. Freyaldenhoven and other doctors that his headaches occurred 1-2 times per month, and that medication was effective in managing the headaches. At the hearing, Deshazer stated that he had 9-12 headaches per month, but that is not consistent with the reports of less frequent headaches that he gave providers on many occasions. (Tr. 54-55).

The statements of a treating physician may be discounted if they are inconsistent with the overall assessment of the physician or the opinions of other physicians, especially where those opinions are supported by more or better medical evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000); *see House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007) (an

ALJ is not required to give controlling weight to the opinion of a treating physician if the opinion is inconsistent with other substantial evidence in the record).  Dr. Freyaldenhoven's statement that Deshazer would miss 40% of a regular work week does not correspond to the other substantial evidence in the record. The opinions of other treating physicians and the opinions of the state-agency physicians were assigned the appropriate amount of weight given the overall medical evidence.

As far as activities of daily living, Deshazer reported that he could walk up to a mile a day and was taking eight classes per month to become a math teacher. (Tr. at 15).  Those activities do not support Deshazer's complaint of 9-12 headaches per month.  The ALJ took this into account when he determined Deshazer could perform light work.

Based on conservative treatment, the mitigating effects of medication, the ability to do significant activities of daily living, the gap in treatment for over a year, and the intermittent nature of the headaches, the ALJ found that Deshazer's condition was not disabling.  That decision is supported by substantial evidence.

## IV.  Conclusion:

There is substantial evidence to support the Commissioner's decision that Deshazer retained the residual functional capacity to perform a reduced range of light work.  The finding that Deshazer was not disabled, within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed.  The case is dismissed, with prejudice.

IT IS SO ORDERED this 15th day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE